UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------X

TRENDX ENTERPRISES, INC.,

                Plaintiff,

- against -

ALL-LUMINUM PRODUCTS, INC., d/b/a
RIO BRANDS,

                Defendant.

------------------------------------X

ECF CASE

Civil Action No.

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Trendx Enterprises, Inc. ("TEI" or "plaintiff"), by its attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant All-Luminum Products, Inc., d/b/a Rio Brands ("AL" or "defendant"), as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to remedy federal patent infringement, 35 U.S.C. § 271 et seq.; federal trademark infringement, unfair competition and trademark dilution under the Lanham Act of 1946, 15 U.S.C. §§ 1114, 1125 et seq. ("Lanham Act"); unfair competition under N.J.S.A. § 56:4-1 et seq.; trafficking in counterfeit trademarks under N.J.S.A. § 56:3-13.16 et seq.; and trademark infringement, unfair competition, and unjust enrichment under the common law of New Jersey.

## JURISDICTION, VENUE AND PARTIES

2. Jurisdiction of this Court is proper under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338(a). This Court has supplemental jurisdiction over plaintiff's New Jersey statutory and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

273039 v1

3.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) because a substantial part of the events giving rise to the claims in this action occurred within this District, and because defendant resides in this District within the meaning of 28 U.S.C. § 1400(b).

4.     Plaintiff TEI is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business in Eatontown, New Jersey.  TEI manufactures outdoor living products and owns the exclusive license to patents for "T-Bar" technology, used in various products such as artificial trees, umbrellas, torches, bird houses, bird feeders, plant holders, lights, flag poles and signs.

5.     Defendant AL is a corporation duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.  AL, doing business as Rio Brands, manufactures and sells outdoor furniture and associated products under the brands "Rio Beach," "Rio Creations," "Rio Gear," "American Patriot," and "Aloha."  AL sells its products nationwide, including in retail markets in New Jersey.

## BACKGROUND

Patents and Trademarks Held by TEI

6.     TEI holds the exclusive license to develop, sell, manufacture and market the "Sun Deck and Pier Rod and Tool Holding Device," U.S. Patent No. 5,120,016, "Boat and Dock Standoff," U.S. Patent No. 5,575,234, "Multi Directional Rod, Umbrella and Tool Holding Devices," U.S. Patent No. 5,813,163, and "MultiDirectional Boat and Dock Cleat," U.S. Patent No 5,941,191 (collectively the "patents", "T-Bar technology" or "T-Bar technology patents").

7.     Dysar Products Inc. ("Dysar") owns the four patents that support the T-Bar technology.  Dysar's patents were granted as follows: 5,120,016 (June 9, 1992); 5,575,234 (November 19, 1996); 5,813,163 (September 19, 1998); 5,941,191 (August 24, 1999).

8. Dysar exclusively licensed the T-Bar technology to TEI in two agreements dated August 21, 1999 and October 3, 2000. The license agreements granted TEI the exclusive right to manufacture, market, sell and/or sublicense the right to manufacture, sell or market products containing the T-Bar technology, excluding all marine products (such as portable multiple fishing rod holders). In return for the exclusive license, TEI was required to pay Dysar royalties for products sold using the T-Bar technology.

9. TEI's primary focus is to manufacture and market devices utilizing the T-Bar technology.

10. The T-Bar is technology which allows various devices such as flagpoles, torches, and umbrellas to be attached to a deck or a dock without screws, nails, glue or other means that may damage the deck or dock surface. The T-Bar technology is attached to, and works in tandem with, a device that acts as a holder. The T-Bar portion of the device fits through the slot between the boards of a deck or dock, and clamps to either side of the boards, securing the holder in place.

11. In or about December 1999, TEI began to brand T-Bar technology devices under the name "Deckster." Those devices were designed to be a receptacle for various items (i.e. Tiki torches, flag poles, market umbrellas, etc.) so they could be securely held to a deck or dock. Over the next few years, three different types of Decksters were developed: (1) the original four-anchor version of the Deckster; (2) a mono-anchor Deckter; and later (3) a two-anchor Deckster. All three designs used TEI's T-Bar technology.

12. Packaging for Deckster products used the words "Deckster", "Deckster™" or "Tiki Deckster™", as well as a Deckster Logo consisting of the word Deckster with an image of a T-Bar technology device in place of the letter "T" (herein, the "Deckster marks"):





13. The Deckster marks are trademarks as defined in 15 U.S.C. § 1127. They were first used in commerce beginning in or about 1999. On June 18, 2007, TEI registered the Deckster trademark, "THE DECKSTER", with the United States Patent and Trademark Office ("USPTO"). A Certificate of Registration was granted on February 26, 2008.

TEI's Sublicensing Agreements with AL

14. In or about 1999, a sales representative for AL approached TEI about manufacturing and distributing the Deckster line of products. Although TEI was not initially interested in working with AL, AL expressed great interest in TEI's products and convinced TEI to meet on several occasions.

15. On or about July 14, 2000, TEI entered into a sublicensing agreement with AL in which TEI granted AL permission to market, distribute and sell the "Deckster" four-anchor T-Bar system as a stand alone product. Under the agreement, AL was not permitted to sell the Deckster in conjunction with or as a companion product to any other product (in other words, AL could not prepackage and sell the Deckster with another product, such as a flagpole).

16. On or about January 30, 2002, TEI entered into a second sublicensing agreement with AL that made AL the exclusive distributor for Value Added Products ("VAP") using the Deckster.  VAPs were an assortment of products to be prepackaged with two- or four-anchor Deckster self-anchoring systems.  The agreement granted AL permission to sell the Deckster prepackaged in combination with products such as Tiki torches, Shepherd hooks, market umbrellas or flag poles.  The January 30, 2002 sublicensing agreement was separate from the July 14, 2000 sublicensing agreement, and did not affect the earlier agreement.

17. Both of TEI's sublicense agreements with AL acknowledged TEI's exclusive license to the T-Bar technology patents, as well as TEI's ownership of the Deckster marks.

18. Under its agreements with TEI, AL would pay royalties to TEI in New Jersey for each Deckster or VAP it sold.

19. On or about August 21, 2002, TEI terminated the original July 14, 2000 sublicensing agreement with AL, as permitted by the agreement's terms. The January 30, 2002 sublicensing agreement pertaining to the VAPs remained in effect.  Accordingly, as of August 21, 2002, AL had permission to sell the Deckster only as VAPs.

Dysar's Termination of the Licensing Agreement with TEI

20. On or about September 16, 2005, Dysar terminated the 1999 and 2000 licensing agreements with TEI, ending TEI's right to sublicense any right to a third party.

21. On or about October 25, 2005, TEI informed AL by letter that TEI no longer controlled the patents used in the Deckster products, and that TEI therefore no longer could sublicense the Deckster to AL.  TEI further informed AL that AL no longer had

permission to manufacture, distribute, sell or market any products using the Deckster or the T-Bar technology.

22. In or about November 2005, AL informed TEI that AL believed the Dysar patents never had been enforceable, and that AL would continue to manufacture products utilizing the T-Bar technology patents.

## PATENT AND TRADEMARK VIOLATIONS

TEI's New Licensing Agreement with Dysar and AL's Subsequent Disregard of TEI's Rights

23. On or about August 17, 2006, TEI reentered into a licensing agreement with Dysar and reacquired the same rights it held under the first two agreements; namely, exclusive right to manufacture, market, sell and/or sublicense the right to manufacture, sell or market products containing the T-Bar technology patents, excluding marine products.

24. Within weeks of renewing its licensing agreement with Dysar, on or about September 8, 2006, TEI contacted AL to inform AL that TEI once again had the exclusive right to manufacture, market, sell and/or sublicense the right to manufacture, sell or market products containing the T-Bar technology, excluding marine products.  TEI and AL, however, did not reenter into a sublicensing agreement.

25. Some time after Dysar had again granted TEI exclusive license to the T-Bar technology patents in or about 2006, the President of Dysar discovered and purchased from a Sam's Club store an AL flagpole which contained the T-Bar technology.  The product packaging for the flagpole used the Deckster name with a trademark "®" next to it (over a year before the USPTO granted TEI the "®" mark), along with the words "patented."  Dysar informed TEI of its discovery.

26. In or about April 2007, the President of TEI observed an AL flagpole product in a Sam's Club store located at 320 West Main Street, Freehold, New Jersey, which contained the T-Bar technology. The product packaging for the flagpole used the Deckster name with a trademark "®" next to it, along with the words "patented."

27. The same product was also advertised on the AL website as late as in or about the summer of 2007, and "deck-mounted" products similar or identical to the Deckster continue to be advertised on the website. The website advertised that the products could be purchased at Walmart, Sam's Club, Ace Hardware, and BJ's Wholesale Club; stores that regularly conduct business in New Jersey.

28. Between approximately September 2006 and July 2008, AL and Dysar communicated with respect to royalties Dysar believed it was due for the period between September 16, 2005 and August 17, 2006. TEI was involved in certain, but not all, communications between AL and Dysar. In a letter dated October 23, 2006, AL stated to TEI that it would be interested in discussing "a program for the future" once Dysar's claims for royalties were resolved, although no agreement was entered into at that time.

29. In or about July 2008, AL brought a Declaratory Judgment action against Dysar requesting the Court to find that the products AL manufactured subsequent to September 16, 2005 did not infringe upon Dysar's T-Bar technology patents. TEI was not named or added to the action.

30. Upon information and belief, in or about December 2009, AL and Dysar settled the Declaratory Judgment action and satisfied all interests and claims Dysar held concerning any matter alleged in this complaint. TEI, the exclusive licensee to T-Bar technology patents during the pendency of that litigation, was not included in, or notified of, the settlement.

31. In or about April or May 2010, Dysar's President stated to the President of TEI in a telephone conversation that the companies' contract concerning the T-Bar technology patents was "still in full force."

32. From on or about August 17, 2006 through the present, TEI retained the exclusive right to manufacture, market, sell and/or sublicense the right to manufacture, sell or market products containing the T-Bar technology patents.

33. Upon information and belief, from on or about August 17, 2006 through the present, AL has continued to utilize the T-Bar technology patents in wanton disregard of the exclusive rights granted to TEI by Dysar in the August 17, 2006 licensing agreement.

34. Upon information and belief, from on or about September 16, 2005 through the present, AL disregarded TEI's rights to the Deckster marks by marketing and selling products containing the T-Bar technology patents and calling those products "the Deckster."

### FIRST CAUSE OF ACTION
### Federal Patent Infringement
### 35 U.S.C. § 271

35. TEI repeats and realleges paragraphs 1 to 34 of the Complaint as if fully set forth herein.

36. AL has made, used, sold, or offered to sell within the United States or import to the United States, products that infringe, either directly or under the doctrine of equivalents, the claimed design of the T-Bar technology patents.

37. By virtue of TEI's exclusive license to the T-Bar technology patents, TEI has acquired and continues to maintain the right to sue to recover for AL's infringement.

38. AL had full knowledge of TEI's rights in the T-Bar technology patents during all relevant time periods; on information and belief, AL's infringement is willful and deliberate.

39. On information and belief, AL has induced, and continues to induce, others to infringe the T-Bar technology patents.

40. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

41. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of patented products, loss of reputation and goodwill, and other irreparable harm.

**SECOND CAUSE OF ACTION**
**Trademark Infringement**
**Section 32 of the Lanham Act, 15 U.S.C. § 1114**

42. TEI repeats and realleges paragraphs 1 to 41 of the Complaint as if fully set forth herein.

43. AL's continued use, without TEI's consent, of the Deckster marks, or similar trademarks, trade names or trade dresses (on packaging, at trade shows, in advertisements, on the web, and in other ways customary in the trade) in the sale, offering for sale, distribution and advertising of goods, is an infringement of TEI's exclusive rights to the Deckster marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. AL's unauthorized use of the Deckster marks, or similar trademarks, trade names or trade dresses, is likely to cause confusion, to cause mistake, and to deceive consumers, the public, or the trade, in New Jersey and elsewhere, as to the source, origin, affiliation, sponsorship or approval of AL's goods.

45. Upon information and belief, AL had knowledge of TEI's ownership of the Deckster marks, and acted deliberately, intentionally and willfully to unfairly benefit from the incalculable goodwill inherent in those marks.

46. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

47. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of trademarked products, loss of reputation and goodwill, and other irreparable harm.

### THIRD CAUSE OF ACTION
### Unfair Competition
### Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a)

48. TEI repeats and realleges paragraphs 1 to 47 of the Complaint as if fully set forth herein.

49. AL's unauthorized use of the Deckster marks or similar trademarks, trade names or trade dresses (on packaging, at trade shows, in advertisements, on the web, and in other ways customary in the trade) is likely to cause confusion, to cause mistake, and to deceive consumers, the public, or the trade, in New Jersey and elsewhere, as to the source, origin, affiliation, sponsorship or approval of AL's goods.

50. AL's unauthorized use of the Deckster marks, or similar trademarks, trade names or trade dresses, in the manner alleged above, in such a fashion and design as to imitate TEI's Deckster marks, constitutes a false designation of origin, description, or representation of AL's goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Upon information and belief, AL had knowledge of TEI's ownership of the Deckster marks, and acted deliberately, intentionally and willfully to unfairly benefit from the incalculable goodwill inherent in those marks.

52. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

53. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of trademarked products, loss of reputation and goodwill, and other irreparable harm.

### FOURTH CAUSE OF ACTION
### Trademark Dilution
### Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

54. TEI repeats and realleges paragraphs 1 to 53 of the Complaint as if fully set forth herein.

55. AL's wrongful acts have caused, or are likely to cause, dilution of TEI's famous trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

56. Upon information and belief, AL had knowledge of TEI's ownership of the Deckster marks, and acted deliberately, intentionally and willfully to unfairly benefit from the incalculable goodwill inherent in those marks.

57. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

58. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of trademarked products, loss of reputation and goodwill, and other irreparable harm.

## FIFTH CAUSE OF ACTION
### Trademark Counterfeiting
### N.J.S.A. § 56:3-13.16

59. TEI repeats and realleges paragraphs 1 to 58 of the Complaint as if fully set forth herein.

60. AL has used, without TEI's consent, reproductions, counterfeits, copies, or colorable imitations of TEI's Deckster marks in connection with the sale, distribution, offering for sale or advertising of the Deckster or similar products, which are likely to cause confusion, mistake or to deceive consumers, the public, or the trade, in New Jersey and elsewhere, as to the source, origin, affiliation, sponsorship or approval of AL's goods.

61. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

62. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of trademarked products, loss of reputation and goodwill, and other irreparable harm.

## SIXTH CAUSE OF ACTION
### Unfair Competition
### N.J.S.A. § 56:4-1 et seq.

63. TEI repeats and realleges paragraphs 1 to 62 of the Complaint as if fully set forth herein.

64. The foregoing acts of AL constitute unfair competition in violation of N.J.S.A. § 56:4-1 et seq.

65. AL's unauthorized use of the Deckster marks, or similar trademarks, trade names or trade dresses, is likely to cause confusion, to cause mistake, and to deceive consumers,

the public, or the trade, in New Jersey and elsewhere, as to the source, origin, affiliation, sponsorship or approval of AL's goods.

66. Upon information and belief, AL has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

67. AL is liable to TEI for all damages, whether direct or indirect, for the misappropriation of TEI's name, brand, trademark, reputation and goodwill.

68. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

## SEVENTH CAUSE OF ACTION
### Trademark Infringement and Unfair Competition
### New Jersey Common Law

69. TEI repeats and realleges paragraphs 1 to 68 of the Complaint as if fully set forth herein.

70. AL's acts constitute trademark infringement and unfair competition in violation of the common law of the State of New Jersey.

71. AL, without authorization from TEI, has used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Deckster marks.

72. AL's unauthorized use of the Deckster marks, or similar trademarks, trade names or trade dresses, is likely to cause confusion, to cause mistake, and to deceive consumers, the public, or the trade, in New Jersey and elsewhere, as to the source, origin, affiliation, sponsorship or approval of AL's goods.

73. Upon information and belief, AL has knowledge of TEI's ownership of the Deckster mark and has acted deliberately, intentionally and willfully to unfairly benefit from the incalculable goodwill inherent in the Deckster marks.

74. AL's wrongful acts have caused and will continue to cause TEI irreparable injury not compensable with money damages that will continue unless enjoined by this Court.

75. As a result of AL's conduct, TEI has sustained damages in an undetermined amount, including lost sales of trademarked products, loss of reputation and goodwill, and other irreparable harm.

### EIGHTH CAUSE OF ACTION
### Unjust Enrichment
### New Jersey Common Law
### (in the alternative)

76. TEI repeats and realleges paragraphs 1 to 75 of the Complaint as if fully set forth herein.

77. The acts complained of above constitute AL's unjust enrichment at TEI's expense, in violation of the common law of the State of New Jersey.

78. AL manufactured, used, sold and marketed products using patents and trademarks to which TEI held exclusive license or owned without TEI's permission or authorization.

79. TEI reasonably expects remuneration and consideration for any manufacture, use, sale and marketing of products by AL that used TEI's patents and trademarks.

80. AL's unauthorized manufacture, use, sale and marketing of TEI's patents and trademarks without permission deprived TEI of the profit it would have realized had it manufactured, used, sold and marketed those patents and trademarks itself, or in the alternative,

deprived TEI of reasonable royalties for manufacture, use, sale and marketing of such patents and trademarks during the period in question.

81. The acts complained of above constitute AL's unjust enrichment at TEI's expense, in violation of the common law of the State of New Jersey.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a) declaring that the acts and practices complained of herein are in violation of 35 U.S.C. § 271 et seq.; 15 U.S.C. §§ 1114, 1125 et seq.; N.J.S.A. § 56:3-13.16 et seq.; N.J.S.A. § 56:4-1 et seq.; and the New Jersey common law;

b) preliminarily and permanently enjoining and restraining these violations of 35 U.S.C. § 271 et seq.; 15 U.S.C. §§ 1114, 1125 et seq.; N.J.S.A. § 56:3-13.16 et seq.; N.J.S.A. § 56:4-1 et seq.; and the New Jersey common law;

c) requiring defendant to recall from any distributors and retailers and to deliver to plaintiff for destruction or other disposition all remaining inventory of Deckster, VAP or other products utilizing the T-Bar technology patents, including all advertisements, promotional and marketing materials therefore, as well as the means of making same;

d) requiring defendant to file with this Court and to serve on plaintiff within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which defendant has complied with the injunction;

e) directing such other and further relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by defendant has been authorized by

TEI, or is related in any way with TEI, its products, the Deckster marks, or the T-Bar technology patents;

   f) awarding plaintiff damages adequate to compensate for AL's patent infringement, but in no event less than a reasonable royalty for the use made of the patents by the infringer, and directing that such damages be trebled in accordance with 35 U.S.C. § 284.

   g) awarding plaintiff statutory damages of $2,000,000 per counterfeit mark in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) or alternatively, ordering AL to account to and pay to plaintiff all profits realized by their wrongful acts, and also awarding plaintiff its actual damages, and directing that such profits or actual damages be trebled in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) and N.J.S.A. §§ 56:3-13.l6(d) and 56:4-2;

   h) awarding plaintiff punitive damages to which it is entitled under applicable federal or state laws;

   i) awarding plaintiff its costs, attorneys' fees, investigatory fees and expenses to the full extent provided by 35 U.S.C. §§ 284, 285, 15 U.S.C. § 1117, and N.J.S.A. § 56:3-13.16(d);

   j) awarding plaintiff pre-judgment interest on any monetary award made part of the judgment against defendant; and

   k) awarding plaintiff such additional and further relief as the Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
May 2, 2011

                                          VLADECK, WALDMAN, ELIAS &
                                             ENGELHARD, P.C.

By:   */s/ Gregory S. Chiarello*
        Milton L. Williams, Jr.
        Gregory S. Chiarello (GC 3711)
        Attorneys for Plaintiff
        1501 Broadway, Suite 800
        New York, New York  10036
        (212) 403-7300